Thank you, Your Honor. Good afternoon. May it please the Court, I'm Richard Walker. I have the honor of appearing and presenting argument in this matter on behalf of Maricopa County, Arizona, the appellant defendant. It seems like a family reunion every time we get together on this case. I think this is number four, isn't it? Let's see, yes, this would be number four. Welcome back. But this is only my second time. I would, with the Court's permission, I'd like to reserve ten minutes for rebuttal. We're here today, Your Honors, for three compelling reasons. First and foremost, we need to seek this Court's assistance in reining in what the District Court has done in essentially taking over and arrogating to itself some of the most vital functions of the Maricopa County Sheriff. Those include the management of the workforce, and the Court has enmeshed itself in the minutiae of internal affairs investigations, disciplinary matters, staffing and manpower deployment, and the handling of civilian complaints. The District Court took a position, disagreed with you. What was the basis upon which the District Court disagreed? Well, I'd say one point of disagreement was in the interpretation and application of the United States Supreme Court decision in Rizzo v. Goode. Well, actually, Rizzo v. Goode was not an injunction offered after issued after three or two or three earlier injunctions had been blatantly violated, was it? That's true. Isn't that critical? Isn't that the central point here? I would suggest in light of the Supreme Court's subsequent decision in Spallone v. the United States, which indicates that the strictures on federal equitable powers is even tighter, stricter, if you will, in cases where the issue of contempt is concerned than they are generally. Counsel, I have a question for you. It seems to me that the crux of your argument is the injunction is really long and has a lot of parts to it, but it seems to me that the real question is whether the injunction matches the problem, because as I read the Supreme Court's cases, they require a match between the problem and the solution. Where is there a mismatch in your view? I know it's long and I know it's detailed, but those are not improper per se, so where's the lack of fit? Well, you raise an excellent point, Your Honor, and I think there is no fit at all. The issue of whether when a law enforcement officer does something that violates someone's constitutional rights, whether that law enforcement officer is then later subjected to internal discipline is not itself a constitutional violation. There's been no authority cited to that effect, and I've been able to find none. What the Court did was it saw deviations, or what it perceived to be deviations, from the procedures that were in place in order to manipulate the disciplinary process and to minimize the discipline that was imposed. That in itself, however, does not, I don't think, constitute a constitutional violation. But it wasn't a constitutional violation. Why wasn't it a violation of the earlier order of the Court or part of it? In other words, the Court had said that, for example, for a discovery, you had to bring certain things forward and they were not brought forward, and then there was no discipline for the people who didn't bring it forward. Aren't those not connected to each other in terms of the Court's contempt powers? Well, again, Your Honor, I think the issue is where's the constitutional violation? Why does it have to be a constitutional violation? Why can't it be a violation of specific orders of court and procedures in the courtroom, in the court, in the litigation concerning the fact that things were being hidden, things were being taken from people, they were being stored in garages, they were being not brought forward when they were supposed to be? Why does it have to be a constitutional violation? Well, Your Honor, I don't think there has to be a constitutional violation in order for the Court to exercise its contempt powers. The problem is when the exercise is in the form of an injunctive order that invades the prerogatives of a State or local  Then we get into issues of Federalism and comedy, to which I submit the district court in this case paid too little heed. The district court, as I understand it, thought that it was so involved, the process was so involved, that they got into things I suppose it would be better no one would want them in there, including the district court. But, for example, on punishment, the monitor was able to start taking care of that, but the restriction was that he couldn't get involved in punishment or in the process itself. So what I was wondering is why wasn't the district court order limiting itself to the problem and staying away from issues that it shouldn't be in? Can you give me some specifics? Well, if I understand your question, Judge Wallace, I think where the Court went awry is starting off with the premise that what had happened was a manipulation of a system. A simple order that prohibited further manipulation of the system and then leaving it to the law enforcement agency to figure out how best to comply with that, I submit, would have been an entirely appropriate response. But the judge did. That's what I'm saying. They'd already done it. That didn't work. He tried that. Well, the – I still think that the issue of internal discipline is so central to the discretionary functions of this agency that the Federal courts needed to utilize the least intrusive possible approach, as this Court – I think we could agree with that. The problem was that the district – Judge Snow was trying to get to the place of making sure it was being done, but not getting into the actual discipline, as I understand the record. Well, actually, Your Honor, I think that the ultimate approval for disciplinary decisions under the order rests with the monitor and then the judge in many instances. There are some instances where that's not fair. Explain that. Well, any disciplinary decision – any investigation that results in a disciplinary decision, meaning for or against discipline, must be reported to the court, and the court has the authority to override that. The monitor has the authority to override that, particularly in cases that are asserted to involve the interests of the plaintiff class. Well, my understanding of the underlying findings of fact for that determination was that after Judge Snow's first and second injunctions, when there were – there were – and when all these discovery and other quite egregious things came to light, there were disciplinary proceedings begun within the agency, within the sheriff's office, and they were – they were very specifically set out in Judge Snow's order that the people who were determining the disciplinary proceedings were enmeshed with the people who they were judging, and in every instance, there were initial determinations of culpability, but the final decision was not. Is that inaccurate? There was a bit – there was an officer, Olson, who was doing some of this and there were others, and he spells them out in great detail for pages. Well, basically, yes, Your Honor. There were disciplinary processes, some of which led to initial determinations of a likely violation that ultimately did not result in discipline. Uniformly. Uniformly. I think there was one exception. Okay. Well, doesn't that give him some reason to think that the system just can't take care of itself? I think the – the answer to that, Your Honor, is the fact that there was this deviation from the system left the court with the simple option of compelling or prohibiting further deviations, and that leaves a system in place that is devised by the State or local agency as opposed to imposing and injecting the federal judges. Okay. Suppose it happens again. Suppose it happens a fourth time. The fourth time, then does he get to be more specific? Well, I think there – first of all, as things unfolded, it wasn't just Judge Snow who thought it was time for a change. The Maricopa County electorate did, too, and one of the problems we have with this – the ongoing burdens of these injections of the federal judicial standards is we've got a new sheriff who's elected on a platform of change, and he's being hamstrung. Right. Is it of any significance that he isn't here as a party, although he could be? I think there – first of all, there was an appeal filed by Sheriff Arpaio while he was still in office. Right. And I gather it's been abandoned by the current sheriff, although he could have continued it on. It was withdrawn. That's true, Your Honor. Does that suggest that maybe he doesn't want to contest the injunction, that he's willing to work with it? Actually, Your Honor, I think the more likely explanation, although I can't speak for Sheriff Pinzon, is that he wanted to distance himself from the portion of Sheriff Arpaio's efforts to have Judge Snow ousted from the case. Whatever the speculation is, getting back to the actual order itself, I have it before me. I'm talking about the discipline, which I think is a critical area of your appeal. It says that while the monitor can access all MCSO internal affairs investigations to evaluate their good faith compliance with the order, the monitor does not have the authority to direct or participate in investigations or make any orders to matters which do not relate to the plaintiff's class. Isn't that — isn't his direction pretty — that the monitor is going to make sure that there's a fair game but is not going to get involved with the actual discipline? Isn't that a fair — I'm just wondering what's wrong with that direction of Judge Snow. Well, a couple of things, Your Honor. First of all, with respect to class-related matters, the monitor has and the judge have the final say. And, of course, that provision isn't dealing with that situation. Secondly, there's another provision, and I don't have the number off the top of my head, but there's another provision that says that the authority to direct authority — the ultimate disciplinary authority and discretionary authority will be ceded back to Maricopa County Sheriffs only after the decisions reached in disciplinary matters agree with those of the monitor 95 percent of the time for a period of three years. So, I mean, that does not give the monitor the direct authority to make the decisions.   And, of course, that discretionary authority is going to be the one that controls. Under the supervision of Judge Snow? Yes. Yeah. But there was no indication here that they actually got on the discipline. They were just checking who was disciplined and what the results were. In that particular provision, Your Honor, I agree that's an oversight provision that authorizes the monitor to review what has been done and to report on whether he feels it was done properly. In addition to the — and, you know, I would commend the Court's attention to the Supreme Court's decision in Lewis v. Casey where the Court talked about another — I think the phrase used in the opinion was wildly intrusive — federal district court order that was, I believe — Was that one after two levels of contempt as well? I'm sorry? Was that one after two levels of contempt as well? If I remember Casey correctly, I believe there had been some prior orders that had not been complied with. I don't recall whether there had been contempt findings. And one other aspect before we leave this subject that I want to bring to the Court's attention is Judge Snow's order stipulates that all personnel assignments to three of the MCSO bureaus — the Professional Standards Bureau, the Bureau of Internal Oversight, and the Court Implementation Division — all personnel assignments into and out of those divisions have to be approved by the Court. So this is another way in which the Court has interjected itself into the internal affairs of a local government agency. I don't think there's any question about that. I think you make a good point. The only issue is, did Judge Snow abuse his discretion in finding that this problem wasn't just with the sheriff and the assistant, but it had become epidemic within the sheriff's office, and that Judge Snow was taking another step down for that reason? He certainly had the Court and the — and his assistants well involved in the issue. But the issue is, as indicated earlier, was that necessary to fit, to be able to fix a problem? Is there a match? And you say there isn't a match. And what in the record tells us — what in the record tells us that the monitors should not have been involved in these areas? Well, I don't recall any findings by the Court. There certainly — Judge Snow was unhappy with the decisions that were made. That's very clear. And there were issues about whether there had been appropriate training for investigators and that sort of thing, which are addressed in other parts of the order. But I don't recall anything specifically finding that the personnel assigned to these various bureaus were not appropriately assigned in some way that runs afoul of federal law. I thought he found that they essentially were all people who were intimately involved with the people who they were judging and supervising, and that that was a lot of the problem here, with very specific findings. Well, actually, I think, Your Honor, what you're referring to is when it got to the top, and certainly when it got to the chief deputy level, there were numerous findings about the personal involvement of people and conflicts of interest and that sort of thing. I don't recall anything specifically about anybody at the director level or below in any of the three bureaus I mentioned having been involved — having been assigned inappropriately. But there certainly were findings at the command staff level. I'd like to turn now, with the Court's permission, to a second aspect of the order that we find troublesome. And this is, granted, a much more subtle issue. But the Court, in certain respects, has ordered the county which — as to which there were no findings of contempt. No county employees were involved in any conduct that has been found in any of the malingerous proceedings. Well, the problem, of course, goes back to the State court finding that the — holding that the sheriff's office is not independent, meaning — and therefore it's the county. So in some sense, these are county employees. Okay. But let me try to phrase it this way. The sheriff was — has been separately represented in this proceeding for most of its duration. There was a very early time before the county was originally dismissed out when there was joint representation. But the portion of the county government that works under the supervision of the none of those employees have been found to have been involved in contemptuous conduct, to have violated anyone's constitutional rights, or to have instigated or encouraged it. Counsel? Counsel? Counsel? I have a question. Hello? Can you hear me? Yes, we can. Great. Okay. As I understand it, the sheriff is the policymaker for the county in the area of law enforcement. And so the sheriff's policies are the policies of the county with respect to law enforcement matters. Is that a correct understanding of his role in relationship to the county? Well, actually, we strongly disagree with that, Your Honor. We think a rigorous analysis and application of the standards enunciated by the Supreme Court in McMillan v. Monroe County, Alabama compels a... I'm sorry. I also have, as you're answering this, could you talk about whether our previous statement in, I think, Mellendris 3 counts as the law of the case on this issue? I'd submit it isn't, Your Honor, at least not technically, because the grovelman of that decision was that the court did not have jurisdiction. And the lack of jurisdiction would make any other pronouncements on issues in the case. I submit, at least arguably... We had reasoning about why we didn't have jurisdiction, which were essentially this understanding. So it is part of the holding that there isn't jurisdiction, right? Well... As to why there wasn't jurisdiction. I'd respectfully request, in any event, that the court reconsider its position. I think this is a very important issue that has implications far beyond the parameters of this case. And the county has not been able to get a rigorous analysis of McMillan and the application of its standards from any state court, the district court in this case or other cases, or with all respect, even this case, even this court. The court's decision in Melendrez III relied on the Flanders decision, which is a court of appeals decision. And there are two problems with that. First of all, Flanders is a jails case. And McMillan makes it very clear that when assessing whether a sheriff is acting as a policymaker for the county as opposed to a policymaker in the county, the court has to look at the various factors, the most important one of which, I think, is evident from the McMillan decision. And as the 11th Circuit has uniformly held in Gretch and its progeny, is the issue of control. And the cases are uniform that the county, given the peculiarities of the structure of government in Arizona, which is not a hierarchical system, that the sheriff is not subject to, for purposes of his law enforcement function, is not subject to the control of the Board of Supervisors and the county. Let's try to understand your position. Is it that he's a state officer or he's a nobody officer? Well, I would say he's acting on behalf of the state because what he's doing is enforcing state law. I thought, though, that under the Arizona Constitution, the sheriff is a county officer. Am I mistaken about that? The word or the phrase county officer is used in the Constitution. But the McMillan case makes it clear that labeling in the statutes and constitutions of the state doesn't really tell us anything. You have to look beyond that to the actual functional. Is the sheriff enforcing only state law? He doesn't enforce county ordinances? I would say, to the best of my knowledge, the overwhelming majority of what the sheriff does in law enforcement is the enforcement of state laws. And isn't the county responsible to obtain liability insurance for the sheriff or self-insure with respect to him? No, there is no requirement under state law. There is a provision. It's ARS 11-981. And the need to take a step back and explain that under the Arizona Constitution and statute, the institutions of county government only have By the way, you wanted to save ten minutes and you only have three and a half now. So do you want to stop? Thank you. Go ahead. They only have the powers that have been clearly delegated to them. And under Arizona statutes, as was the case with Alabama statutes in McMillan, all of the law enforcement authority is devolved upon the sheriff. And there is no provision for the counties and their boards of officers to participate in law enforcement functions. So, and I sort of lost my train of thought there. I apologize. But the point that I'm trying to make is that under Arizona law, because the county cannot, does not have the authority to pay for damages other than as has been delegated by the state legislature in 11-981, it does not have the authority to pay for damages and claims that are based on conduct that is not within the scope of employment or authority. And so if a Federal court orders you to pay it, therefore the state law governs over the Federal order? I'm glad you asked that question, Your Honor, because the real nub of this is I would suggest that the appropriate order for, under the circumstances of this case, where all of the activity found to have been improper is by the sheriff in the context of the law enforcement, would be to order the sheriff to pay. Now, the I thought that Arizona statute 11-444 provides by Arizona statute that the county pays for the sheriff's costs. That is correct with the caveat that, and for some reason I can never remember the exact phrase, but it's necessary. One word is necessary. It's not necessary if you were ordered by a Federal judge to do it? Well, no. Where I'm going with that, Your Honor, is the point is if the sheriff is ordered to pay, then that throws it into the budgetary process. And the source of the funds for payment is then decided by the people who are politically elected, who are elected to make that decision. If the court orders the county to pay, then that sort of takes that off the table for the budgetary discussion. But we've been told by the Arizona courts that the sheriff is not an independent entity, so we can't order it to pay. Actually, Your Honor. The sheriff as a person, yes. But the sheriff as an official, no. Forgive me, but I think the holding is that MCSO is not a general entity. Well, right, of course. But the sheriff himself isn't going to pay. Well, actually, I think the But you want us to order the new sheriff to pay out of his pocket? I do think that the appropriate order for payment, for example, for the victim's compensation fund would be to direct the sheriff to pay. I don't think that's going to affect the fact of payment, but it will foster a discussion in the budgetary process about where those funds come from that, quite frankly, I think would be useful. Well, if we can't order MCSO, the only person we could order would be the sheriff himself as an individual, which doesn't seem like an appropriate thing to do. In any event, your time is up, so thank you very much. Thank you. Let me ask one other question just to satisfy me. How is the position you take now different from the position of the county in Melendez 3 where you consented that it is reasonable for charges to be paid by the county and the earlier stipulation prior to Melendez 3 where if the sheriff's department turns out to be, you can't sue them, that the county was willing to substitute? I'm just wondering whether those prior actions foreclose your current argument. I don't think so, Your Honor, because in those prior actions, we were not dealing with willful and intentional misconduct and, therefore, conduct that under 11-981 would be beyond the scope of authority and employment. I see. Okay. Thank you very much. Thank you. Good afternoon, Your Honors. Andres Segura for Plaintiff Appellees. With me at counsel table are Cecilia Wong and Katrina Island. I believe we've divided this up where the Plaintiff Appellees have 20 minutes and Mr. Gore for the Department of Justice will take 10. We're happy to use that time as the court sees fit. Just quickly here, Your Honor, the county asks for enormous relief here that the entire second supplemental injunction be stricken but offers really no specifics about why the record does not support the remedies issued by the district court or why those remedies are not tailored to address the harm that was found by the district court. The county's arguments focus here primarily on costs. They have indicated that these remedies will place a financial burden on the county. However, they've also provided no specifics as to what these remedies will, in fact, cost the county and if the court wanted to, in fact, weigh that, it could not. The county also indicates here that a simple order telling the ---- Well, wait a minute. If we were wrong, it wouldn't matter how much it costs, a dollar or a million dollars. We would have to change it so it doesn't weigh the argument. It doesn't show us how extensive the problem is. Right, Your Honor. Whatever the cost is necessary to fix the problem would have to be imposed. That's right. And courts have found that costs alone cannot impede a remedy issued by a Federal court of constitutional violations. Did they ever come in with a number? Has a number ever been propounded? Well, the county, and I don't have those numbers before me, but the county has approved and continuously does approve a budget. No, but I'm asking in court. Did they ever come in and object that this provision is going to cost us X amount of money and you could do it cheaper by doing it my way? No. None of the provisions here that were ordered as to reforms of the internal affairs systems around supervisory measures or even going back on the first appeal for the first supplemental injunction which issued the original orders which the court found to be insufficient. But going back to the bigger point, the county continues to believe that an order simply telling the sheriff to stop would have been sufficient. As Your Honor, Judge Berzon pointed out, there have been repeated failures to follow prior court orders here. But on top of that, there are severe structural issues that the court found in the internal affairs system that needed to be corrected in order to ensure compliance. Well, the problem is this case was not about the internal affairs system as such. It's, you know, it is properly within the injunction only because there were specific things, not all of which had to do with the functional injunction, some of which had to do with the litigation that demonstrated that it was not operating. But the fact that it was something wrong with it structurally in general is not what this lawsuit is about, right? Right. That was exposed during the contempt proceedings. The court obviously had issued a large injunction which was upheld by this court. Then through the contempt proceedings, we realized that, in fact, violations of the court orders had occurred in the hundreds. The property of members of the plaintiff class had been seized without any repercussions and without that information being provided to the plaintiffs even before the original trial. And these were all matters that the MCSO asked to investigate first. So at the insistence of the MCSO, the court actually allowed them to attempt to investigate these using their current system, and they failed. And based on that, the court spends over 100 pages in its findings of fact detailing all of the failures, not just by willful subversion, but in large part because of systemic and structural issues that permitted these flawed investigations to continue. So ultimately what the court did here was just take the next step. It's a very calibrated measure to ensure compliance with its orders to ensure that failures to follow with prior orders are dealt with correctly and that there is future compliance. The only way that the court can ensure that is through a proper functioning internal affairs system. The one thing that we just approved in the injunction, in the first go-around on the injunction, dealt with some of the disciplinary, the scope of the monitor's authority over the disciplinary proceedings going outside this particular subclass, right? Right. Now, I gather that this injunction does do that. Is that right? In other words, if one thought the facts were the same as they were originally, then this injunction would violate our earlier order. Is that right? Right. So the court has put in place measures to both address violations of its orders which do not simply only apply to members of the plaintiff class. For example, there are data collection orders that apply to anyone who's stopped while out on patrol. Those orders have to be followed. The court here has limited the monitor's authority over investigations that are subject to the class. The monitor does have the authority to supervise those. What I'm asking you is whether the current injunction on its face is consistent with our earlier opinion, leaving aside the fact that the facts changed. Yes, absolutely. Here it's tailored to only address violations that this court found and that were allowed to proceed because there wasn't a functioning internal affairs system, Your Honor. I'm not understanding the answer to my question. What was the exception in our earlier opinion exactly? The exception in the early, the court found that there were two provisions that did not directly relate to the constitutional violations that the court had found. So these were disciplinary outcomes for violations of policies that were not pursuant to court orders and also for, I believe, off-duty conduct. And those were found to be improper because they were independent measures that the monitor could consider in terms of whether there are, there's, in terms  All right. My understanding is, I don't know about the second, but as to the first, this injunction does cover that. This injunction allows the monitor to compare investigations that are done that are not related to the plaintiff class or to the court's orders to ensure that investigations are being done consistently. So there are two, there are really two, two different buckets. One are investigations that deal with only matters related to the plaintiff class and related to the court orders. In those matters, the monitor does have supervisory oversight and can direct. Then there are matters that are, that are everything else. And the court has found that it has to, it has to provide the monitor at least the authority to review those. It has no authority to take any action on those or to make any findings on those. But it has to be able to compare the two to ensure that they're uniform, that they're being treated uniformly. It's not, what we said before was that the injunction broadly requires the monitor to consider the disciplinary outcomes for any violation of departmental policy and to assess whether deputies are subject to civil suits or criminal charges for off-duty conduct. These provisions are not narrowly, so it doesn't say anything, it says consider. These provisions are not narrowly tailored. So we vacate and order the district court to take them, tailor them so as to address only the constitutional violations at issue. I, that's, facially this does not comply with that. Well, Your Honor, it does because here the court has issued an order for new policies on internal affairs investigations across the agency. Well, he's also made a whole bunch of new findings, which is what I thought you were going to say. Right. But as to whether if there hadn't been a whole bunch of new findings, there wouldn't be a lack of compliance with this directive. Right. And that was the court's point, that it did not have those findings, it didn't have the evidence before it when it issued its first injunction and what was considered by this court. Now it found that the internal affairs system was dysfunctional and it had to be fixed. So it ordered remedies to that system and that's a new court order that the court has to ensure is being followed, whether it applies to the class or whether it applies to matters unrelated to the class. I do think there might have been a little more attention to our order and an explanation for why it could be overcome on this record, because it is overcoming it. It is inconsistent with our directive. Well, Your Honor, the important, the court found that it can't just have a set of internal affairs policies that only apply to the plaintiff class or only apply to the issues in this court. But we said he should, so he had to tell us why even though we said he should, he shouldn't. Well, here the court found that there were, there was a mistreatment between class-related matters and non-class-related matters. It found that there was a policy which was specifically only for matters relating to this case in which discipline would be lumped together. The court found that investigations were treated less seriously when they were related to the class. There was, there were inequitable policies that would only apply to the class, and so there was disparate treatment between investigations of the class and of the non-class. So that's where the court is explicitly complying with this court's prior decision to ensure that the authority it's given is only tailored to investigations about the class. Here, Your Honor, the county has focused a lot on the contempt authority of the court. The court made clear that it was issuing these orders not simply because of findings of civil contempt, but because also there was in its equitable authority to modify and expand prior orders that the court found were simply, simply insufficient. And here the fit is direct. I think Judge Berzon, you did an excellent job of explaining the fit here between the remedies, the remedies imposed here and the violations of the court orders. And, you know, simply the court here found that the internal affairs system could simply, could not take care of itself. The agency could not adequately police itself. One point, Your Honor, on the court. Because it didn't. It hadn't. Yes, Your Honor. It was given the chance and it didn't. Exactly. It was given multiple opportunities over months to correct, and the court in extensive findings found that. In other words, it wasn't speculative or anything. It was based on what actually happened. Exactly, Your Honor. And the court found originally that it did not have this. This evidence could have been presented to the court in the original trial. The plaintiffs, in fact, asked for remedies that were much broader than even the court issued in the first and were not ordered. And now the court has gone further in order to take the next step and ensure compliance with its orders. Now, sooner or later we're going to get out of the sheriff's office, I assume. And you have a new sheriff and there's nothing to indicate in the record that he's anything other than a citizen who wants to do his duties and upholding his sworn oath. So I think that the county has a right to make sure that this isn't a permanent assignment of the monitor and that moving towards the time when we can do away with monitoring, what action has been taken to move towards that position? Absolutely, Your Honor. And it's our position that that discretion really lies with the district court. He's the one with the extensive knowledge of this case and with Penzo. I thought there were negotiations. Is there anything in the findings of fact or the statements of the district court that indicates that that is a key part of what he's ordering the monitor to do? Yes, Your Honor. There are, in fact, in the record provided by the DOJ, there are two instances in the record in which the court has already taken up proposed changes to its injunctions by the sheriff's office. And in both of those cases, and one in which it granted a slight modification to how community meetings are done, this was most recently in July of 2017 and it's at DOJ SCR 13-14. The court explained its view about Sheriff Penzone and how his orders apply to him. The court explained that the plaintiffs had been through years of litigation and were entitled to relief. He noted that there are systemic issues that are continuing, matters of organizational bias and findings of likely that deputies are engaging in bias. And the court found, quote, that while Penzone has been more cooperative, the court still requires him to be responsive to court orders until MCSO has established a track history of complying with those orders. Has he given any indication what he has in mind by a track? How long the track is going to be? Well, right now the current track is it's a compliance period of three years in which there must be 95% compliance. What is the three years up? This is also important to the question. The sheriff's office has not achieved full compliance yet with the first injunction. It's about, on average, 75% compliance with the first injunction and has reached about 70% compliance with the second injunction, which is before this court. And so we're not even at the point of starting the clock to three years because there are still significant issues within a very large agency that haven't changed. Judge Graber has a question. Counsel, I have a question for you. Apart from the three-year clock, which is embedded in the injunction, is there any limitation? I didn't see one, but is there any limitation on the ability of the county to come in and request modifications based on new practices and new personnel should that seem appropriate? Absolutely, Your Honor. The county or the sheriff can go to the district court and ask for a modification. For example, with the supervisory ratio that's complained of again, which the court has now reduced to one supervisor to ten employees, if the county or the sheriff believes that that's a problem, they could go to the district court and seek a modification of that. But they could seek it with any of these, and that would also be an appealable order if the court abuses its discretion in denying that relief, which could then come before this court. That hasn't occurred. The government's brief, I'll ask them, said something about there being ongoing negotiations among the county, the sheriff, DOJ, and the plaintiffs. Is that not so? So there aren't whole negotiations as to each of the remedies and every one. There have been negotiations which have been brought to the court's attention, Your Honor, on specific provisions, and those were the ones that I was referencing that are in the DOJ's supplemental record. For example, the sheriff's office sought a clarification and a modification to how class-related matters are defined, and the court denied their modification and found that it will continue to enforce those orders. So there are some specific conversations that are being brought to the attention of the court, and we will certainly continue working with the Department of Justice, with the county, and with the sheriff to collaborate. In order to, we all have an interest, certainly, in achieving compliance and not being back here in another three, six years. But there are serious issues that continue, and until those are achieved and until the district court is assured that its orders are going to be followed, these orders must remain in place. And, Your Honors, as to the county liability, we've fully briefed these issues in our brief and concur with the Department of Justice. I think one of the most important points is that the county has previously conceded its responsibility to fund remedies for the first supplemental injunction. This second supplemental injunction is building upon that because the first was found to be insufficient. Well, I gather the one that they're most disquiet about is the compensatory relief. With the... The compensatory relief. Right. That's the one that they're complaining about the most. That was not in the earlier injunction, as I understand it. That was not in the earlier injunction, but the county is complaining as to having to fund all of this. It's not clear, in fact, the county... My understanding is that they do have a specific argument about the compensatories, which has to do with a statute that they say limits their responsibility for willful violations. Right. Their argument as to not being able to fund intentional and willful violations applies to the entire second supplemental injunction, including the victim compensation. They make that argument as to both. And for the reasons in our brief, we strongly disagree with that position. The first supplemental injunction, in fact, was based on intentional violations by Sheriff Arpaio and his deputies' intentional acts of discrimination in Fourth Amendment violations. And the county has conceded that it has to fund those... has to fund those remedies. And the remedies now are simply building on prior remedies that the court found were insufficient. If you want to sit down, you may certainly do so. I will. Thank you, Your Honor. Good afternoon, Your Honors. And may it please the Court. John Gore on behalf of the United States. The county has asked to be dismissed from this lawsuit. The Court should reject that request. Can I just clarify something? Sure. There is a... is or was a separate DOJ lawsuit? There is, and it's... All right. Yes. And what's the state of that? It is currently pending before a separate panel of this Court. It's Appeal No. 15-17558, United States v. Maricopa County. It also raises this issue of the county's direct liability for the actions of the Sheriff. And as I said, that's been argued and is pending before a separate panel. But did it result in an injunction or a consent decree or... It resulted in settlements that were signed by the county and then entered as orders of the Court. I see. But in any event... And just... I'm sorry. ...to add a little to that. Is there a substantive overlap as to what's in the injunctions? There are some similar provisions between the injunctions, Your Honor, yes. Okay. And of course, both of those... We intervened... The United States intervened in this particular case. We brought that case as a plaintiff. And so there has been some overlap between the two cases. But in any event, the issue that's been briefed before this Court is the question of the county's liability. And on that question... Before you run away, on this other case, we have... The case is pending now. Has a decision been made? No, Your Honor. We usually let the first case go and make the decision, but we like to find out where they are on the track. What's happening in the other case? Is it fully briefed? It's been briefed and argued. It was argued a few months ago, so it's actually ahead of this case. So it's ahead of this case. Usually that first case gets to file first. Is there any issue with that case that would overlap this case? Yes. The county liability issue is presented in both cases. And we believe that that issue has already been decided by this Court in Melendez II and Melendez III. Right. That's kind of a red war or something because I assume you argued to the other panel that we already decided it. Yes, correct. Okay. And we argued to the other panel that the decisions in Melendez II and Melendez III were correct and we maintain that position. As this Court concluded in Melendez II and Melendez III, the sheriff is the county's final policymaker with respect to law enforcement actions. The sheriff, therefore, acts as the county when he engages in law enforcement activities and the county is liable for those actions. Arizona law couldn't be clearer on this point. Start with the Arizona Constitution. The Arizona Constitution creates the sheriff as a county officer, not as a state officer and not as a member of a state executive department. The Constitution also gives the county the authority to fix and control the sheriff's salary. Second, take a look at the Arizona statutes. The Arizona statutes describe the duties of the sheriff in the chapter on county officers and those duties include law enforcement. The statutes then impose a number of rights and obligations on the county police and the county board of supervisors with respect to the sheriff. The statutes require the board to exercise supervision over the sheriff, to set the sheriff's budget, and to fund the sheriff's expenses. And then the statutes go even farther because they empower the board of supervisors to require the sheriff to issue reports and also to actually even to remove the sheriff in certain circumstances. And finally, there's the factor that this court has said is crucial and weighs heavily in the analysis and that's who pays for judgments against the sheriff. Under Arizona statutes and case law including the Flanders case that was mentioned earlier and Brayard, those judgments are paid by the county and not by the state. So, for all of those reasons, this court's decisions in Melenders 2 and Melenders 3 were correct. And the court correctly concluded that the county is a proper defendant here. The county's made a run at a few arguments to try to get out from under that conclusion, but they don't really go very far and they certainly don't provide a basis for dismissing the county as a defendant in this entire lawsuit. The county even conceded in Melenders 3 that it has responsibility to fund implementation of the district court's injunctions. But now they've made a few arguments and as I said none of those established that the county is not a proper defendant. So, for example, the county has said that any unconstitutional or unlawful or willful or consummation misconduct is outside the scope of the sheriff's authority and therefore the county is not liable. But this court already implicitly rejected that conclusion in Melenders 2 and Melenders 3 and it's easy to see why because it's contrary to the law. If the county's position were correct then no county would ever have any liability for any misconduct by any officer ever. The question of whether something is within the scope of the officer's authority doesn't turn on the officer's state of mind, it doesn't turn on the officer's motive, it doesn't turn on whether the officer's complying with the law or complying with the principal's instructions. It turns on whether the activity the officer is engaged in is a service to the principal and is not a large liability to the principal. The consultant would tell that the deputy would treat this entry  a risk or disadvantage in the service and the responsibility either to the principal or to the principal or to the principal which in their judgment is that the board has no control over the sheriff. The sheriff is a county officer. They also point out that the board doesn't have any law enforcement authority. That proves our point. If the board had that authority, then the board would be the final policy maker, but it doesn't have that authority. Against that backdrop, the conclusion is clear that the sheriff is the final policy maker for law enforcement activities. I know in San Francisco there are other independently elected officers who are still officers of the city, like the city attorney, for example. The city attorney  a county officer. Under Arizona law you have a district attorney, or you have county assessors or county treasurers. You have all kinds of different county officers that have different functions and roles and responsibilities. The fact that the county assessor assesses taxes and the sheriff doesn't doesn't mean the sheriff is not a county officer, it just means that they are performing different functions. So we think that this case is on all fours, that the Arizona law is on all fours with California law, which this Court decided in Malinders 2, all we decided was to substitute the county and in Malinders 3 we ultimately decided there was no jurisdiction although we did it in part my understanding. So the question is have we actually decided this? So we believe that the Court  has made a decision where this Court distinguished McMillan and held that California sheriffs are law enforcement officers of the county and have final policy making authority for law enforcement activities in the county. And there were five important factors there. One was that the Constitution created them as county officers. That's present here under Arizona law. The second was that under California law the county supervises the sheriffs. That's also true here under Arizona law. The third is that the county sets the salary, not just pays it under a mandate of state law but actually sets it. That's also present here in Arizona. So we think Brewster is squarely controlling on this case under that analysis. That's a 275F3803. And the McMillan and the Gretsch cases are completely distinguishable because the factors the courts relied on there are absent in this case. For example, in McMillan it was the state legislature that set the salary. It was the state          state officer. The state constitution said he was part of a state executive department. The county had no power to set   It was the state legislature and the county that paid the judgments. And finally, Your Honor, our final point is what the county is arguing for here is really form over substance. It's clear under this injunction the county and its taxpayers. Even Flanders says that the real judgment, even if the sheriff is sued in an official capacity, you always look at the public entity behind the official and that's the real defendant in interest who is  real defendant. We ask the court to affirm its prior conclusion. Do you anticipate this other case is going to come down soon? We are checking our e-mail constantly for that other case. I suspect you or someone will advise this panel when it comes up. We would be pleased to do so, Your Honor. Yes, Mr. Walker. Two minutes, which is two minutes more than you're entitled to, I think. Go ahead. I thought I reserved 10 minutes. You reserved it, but you don't have it. You used it. I understand. Well, very quickly, I need to clarify something. The county's use of the Respondiat Superior cases is not to argue that the county isn't liable under Respondiat Superior, but McMillan specifically singled out in Alabama the fact that there was no Respondiat Superior. All right. What about all these other factors? What about the who sets the salary and who pays the bills and what the fact that there is some supervisory power, including removal authority, and so on? The litany that we just went through. And I'm glad you gave me the opportunity to address that. McMillan No, I don't want to do that. I want you to go through the factors from Brewer that I just listed. And I was just getting to the budgetary process. McMillan said that the fact that the Board of Supervisors is involved in the budgetary process with the sheriff gives it quote attenuated at best control over the sheriff. And that's exactly what we have in Arizona. My understanding is that it is the Arizona legislature that sets the salary for the sheriff, not the Board of Supervisors. And as far as the removal issue, the sheriff and other county officers to provide reports, and if they fail to provide the reports, to remove them from office. That's very limited removal power. My time is almost up, so I'll stop here unless the Court has further questions. Okay. Thank you very much. Thank you both. I guess I can say that we hope not to see you again, but maybe we will. Thank you very much. The case of Melendrez v. Maricopa County is submitted.
judges: Wallace, Graber, Berzon